RECEIVED

MAY 1 3 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

GLANCE ROBERTSON                         CIVIL ACTION NO. 08-1693

VERSUS                                   JUDGE DOHERTY

W& T OFFSHORE, INC. & BAKER/MO SERV., INC.    MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Pending before the Court are two motions: (1) Motion for Summary Judgment [Doc. 15] filed by defendant Baker/MO Services, Inc. ("Baker"); and (2) Motion for Summary Judgment [Doc. 16] filed by defendant W & T Offshore, Inc. ("W&T"). In its motion, W&T seeks dismissal of plaintiff's claims against W&T on grounds plaintiff was a borrowed employee of W&T and, as a result of the exclusive remedy provisions of the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. §901, *et seq.*, applicable by virtue of the outer Continental Shelf Lands Act ("OCSLA"), U.S.C. §1331, *et seq.*, W&T is tort immune and, therefore, plaintiff's tort claims against W&T should be dismissed. In its motion, Baker argues Raymond Chatelain, Jr., who supervised the plaintiff's work on the W&T platform, is also a borrrowed employee of W&T. Baker therefore contends plaintiff and Mr. Chatelain, are "co-employees," and thus, pursuant to the LHWCA, Baker, as Mr. Chatelain's nominal employer, would be immune from tort liability as to any negligence on Mr. Chatelain's part. Therefore, Baker seeks dismissal of plaintiff's claims against it on grounds both plaintiff and Mr. Chatelain were the borrowed employees of their common borrowing employer, W&T, and therefore Baker is immune from tort liability and any alleged negligence on the part of

Mr. Chatelain allegedly causing the injury of the plaintiff.[1]

Plaintiff responded to both motions by filing one opposition brief.  In his brief, plaintiff merely argues genuine issues of material fact exist, particularly with respect to whether W&T had control over plaintiff for borrowed employee status, and thus, they preclude the entry of summary judgment in either defendant's favor [Doc. 19].  Plaintiff does not specifically dispute or contravene the arguments and/or evidence presented in Baker's motion for summary judgment or present evidence on his own behalf.  For the following reasons, both motions for summary judgment are GRANTED, and plaintiff's claims against both W&T and Baker are DENIED AND DISMISSED WITH PREJUDICE.

## I.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."  F ED. R. CIV. PROC. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

---

[1] In its motion for summary judgment, W&T adopts the reasoning set forth in Baker's motion, calling it "well-founded" and arguing the motion should be granted.  *See* W&T's Motion for Summary Judgment, Doc. 16, p. 1, n1.

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

> . . . .

> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## II.     Factual and Procedural Background

According to the plaintiff's complaint, on or about July 11, 2008, plaintiff was employed by third party Offshore Services of Acadiana, L.L.C. ("OSA")[2] as a cook/steward aboard the fixed production platform known as Ship Shoals 214-E, located on the outer continental shelf in the Gulf of Mexico. The platform in question was owned and/or operated by W&T, and operated and/or

---

[2] OSA was not named as a defendant in the instant lawsuit.

-4-

supervised by Baker.  Plaintiff alleges he slipped and fell while walking on the platform's deck due to a liquid on the deck that presented a dangerous condition.

On November 12, 2008, plaintiff filed suit against W&T and Baker pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §1331 *et seq.*, and Article 2315 of the Louisiana Civil Code for negligence for failure to provide plaintiff with a safe place in which to work; failure to comply with any and all applicable safety standards including but not limited to those enumerated by OSHA; failure to exercise reasonable care in discovering and correcting any and all unsafe conditions existing on the premises; failure to properly inspect, maintain, and repair the premises; strict and/or premises liability; hiring untrained and unskilled employees; failure to properly train employees; retaining employees found to be careless and/or unskilled; failure to provide competent and adequate supervisory authority; failure to warn plaintiff of the dangerous and unsafe condition of the premises; breach of legally imposed duties of reasonable care owed by the defendants to the plaintiff; and other acts of negligence and conditions to be proven at trial.

In their motions for summary judgment, W&T and Baker set forth certain *undisputed* facts. As part of his response to the motions for summary judgment, plaintiff submitted a filing entitled "Statement of Material Facts to Which There is No Genuine Issue to be Tried."  However, review of plaintiff's Statement of Facts shows it does not controvert the "undisputed" facts as set forth by defendants in their Statements of Facts.  Rather, plaintiff merely lists the nine legal factors comprising the borrowed employee analysis as set forth in *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969), and for each legal factor, inserts the words "whether W&T," "whether plaintiff," or "whether or not" as a lead in to each factor.  Specifically, plaintiff does not provide *any evidence* with respect to the underlying facts as they relate to the *Ruiz* factors, nor does plaintiff provide *any*

evidence to specifically controvert the evidence submitted by W&T and Baker. Consequently, the facts as asserted by defendants in their motions are deemed undisputed.[3]

Considering the foregoing, the following facts are deemed undisputed by the parties:

1.  W&T's business is the production of oil and gas from various locations in the Gulf of Mexico.

2.  W&T is the operator of certain oil and gas leases in Ship Shoal Area, Block 214, which is located on the outer continental shelf of the Gulf of Mexico, off the coast of the state of Louisiana. W&T is the owner and operator of the Ship Shoal 214-E fixed oil and gas production platform located in Ship Shoal Area, Block 214.

3.  In June and July 2008, SS 214-E ("the platform"), was not a producing structure and generally was not manned. The platform was being maintained in working order so W&T could defer the cost of plugging and abandoning the structure. The only time the structure was manned was when maintenance work was scheduled and on-going.

3.  In June and July 2008, W&T made arrangements to have the platform sand-blasted and painted by a painting and blasting crew.

---

[3] See Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (unsubstantiated assertions are not competent summary judgment evidence), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 91 L.Ed.2d 265 (1986). In Ragas, the Fifth Circuit stated:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. See Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n. 7 (5th Cir.), cert. denied, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

136 F.3d at 458. See also Cordova v. City of Mansfield, 2006 WL 2513923, 6 (W.D. La. 2006) (where plaintiff did not identify any specific evidence in the record to dispute the defendant's statement of fact, district court deemed fact admitted by plaintiff, citing Fifth Circuit jurisprudence and local rules of court).

See also Local Rule 56.2, which states:

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

4.      To support the maintenance operations of the platform, W&T provided living quarters on the platform consisting of a fully operational galley and bunkhouse.

5.      W&T's production supervisor over the platform was Nick Champagne.  Mr. Champagne was the top authority on the platform.  His responsibilities included the supervision of W&T's operations on the platform, including coordination and orchestration of maintenance activities and assignment and coordination of daily work load of W&T direct and contract employees on the structure.

6.      Because the platform needed to be manned during the time the painting and blasting operations were on-going, Baker nominal employees, Raymond Chatelain and James Vines, were assigned by W&T to act as W&T's contract production Operator-A on the platform.

7.      Mr. Chatelain and Mr. Vines worked opposing hitches and would relieve one another on the platform.

8.      Mr. Chatelain and Mr. Vines received their work orders from Mr. Champagne and were responsible for supervising and orchestrating W&T's work on the platform.

9.      Plaintiff, Glance Robertson, was provided to W&T by Offshore Services of Acadiana LLC ("OSA ") to serve as a contract steward/cook on the Ship Shoal 214-E structure for purposes of assisting W&T in its maintenance operations on the platform.  Mr. Roberts understood that this was the nature of his employment with W&T.

10.     Plaintiff received all work orders which were necessary from Mr. Chatelain or Mr. Vines concerning cleaning of quarters, preparation of meals, or the time for serving meals.[4]

11.     Plaintiff liked his job as W&T's steward/cook and expected to continue working in that capacity for a long time.  Plaintiff worked for W&T on the platform for a period of 22 straight days prior to his alleged accident, and he intended to work a full 30 days before going in for a break.  After his initial hitch, plaintiff intended to work a 21-days on, 7-days off schedule as set by W&T for the unforeseen future.

12.     Plaintiff's job duties included preparation of meals in the galley, ordering of the food, cleaning of the galley, and cleaning of the bunkhouse.

13.     Plaintiff knew what his job entailed, such that W&T employees were not required to

_____

[4] Although plaintiff does not specifically dispute this fact in his responding Statement of Facts, the plaintiff argues in his opposition brief he received work orders from OSA personnel.  Similarly, with respect to Paragraph 13, plaintiff argues a contrary position in his opposition brief.

instruct him on the minute details of his work.  However, the work orders that were given to plaintiff were given to him by W&T personnel, including his W&T contract supervisors, Mr. Chatelain and Mr. Vines, and W&T's Nick Champagne.

14.    Plaintiff reported to and was supervised by Mr. Chatelain and Mr. Vines.  If Mr. Chatelain or Mr. Vines gave Mr. Robertson an order, he followed it.  All of the orders Mr. Robertson received concerning the cleaning of the galley or the bunkhouse came from Mr. Chatelain or Mr. Vines, and all orders plaintiff received concerning preparation of meals or the time for serving meals came from Mr. Chatelain or Mr. Vines.[5]

15.    No person employed by OSA supervised the work plaintiff performed for W&T or gave plaintiff any work orders.[6]  No person affiliated with OSA other than plaintiff was stationed on or working on the platform while plaintiff was working for W&T on the platform.

16.    Plaintiff's work for W&T was evaluated by his W&T contract supervisors, Mr. Chatelain and Mr. Vines.

17.    While working for W&T, plaintiff performed W&T's work.  Like other workers on the platform, plaintiff had full work stop authority.[7]

18.    On July 12, 2008, plaintiff left the galley after preparing a meal to find out from the blasting crew what time he should have a meal ready for them.  On his way back to the galley, plaintiff allegedly slipped and fell, thereby suffering his alleged injuries.

19.    While plaintiff worked for W&T on the platform, he called the OSA office a few times for the limited purposes of reporting his time tickets and advising OSA of how things were going on the platform.[8]

20.    The understanding between W&T and OSA was that plaintiff would perform W&T's

---

[5]Although plaintiff provides no evidence to dispute this fact, and the fact is deemed admitted, the plaintiff argues to the contrary in his opposition to the defendants' motions.

[6] Although plaintiff provides no evidence to dispute this fact, and the fact is deemed admitted, the plaintiff argues to the contrary in his opposition to the defendants' motions.

[7] As will be further discussed in this Ruling, plaintiff contends he was doing the work of OSA while working aboard the platform, but presents no evidence whether affidavit, deposition testimony or otherwise, to support this argument.

[8] Plaintiff argues he contacted OSA personnel for different reasons, but again presents no evidence to support that argument.

work and follow W&T's orders to assist W&T in maintaining the platform.[9]

21.   All of the raw food, condiments, cooking oil and other ingredients plaintiff used in preparing meals were provided, paid for, and delivered to the platform by W&T.

22.   Plaintiff brought only clothing and some personal protective equipment with him to the platform.

23.   W&T provided plaintiff's transportation from the shore to the platform and vice versa.

24.   While working aboard the W&T platform, plaintiff's accommodations on the platform were provided by W&T. Additionally, plaintiff's meals were provided by W&T, although plaintiff prepared them.

25.   Plaintiff attended W&T safety meetings that were conducted on the platform. OSA did not conduct, and plaintiff did not attend, any OSA safety meetings on the platform.

26.   The hours that plaintiff worked for W&T on the platform were set by W&T's contract operators, Mr. Chatelain and Mr. Vines.

27.   Plaintiff prepared time tickets for the hours he worked for W&T on the platform. The time tickets completed by plaintiff were then given to Mr. Chatelain or Mr. Vines for review, approval, and verification.

28.   After review, approval, and verification, plaintiff's time tickets were sent to OSA, which would then pay plaintiff for the hours worked for W&T as reflected by the time tickets. OSA would then bill W&T for the hours plaintiff worked for W&T.

29.   The amount billed by OSA to W&T corresponded directly to the number of hours plaintiff worked for W&T.

30.   Mr. Chatelain and Mr. Vines also completed evaluation form(s) pertaining to plaintiffs cooking quality, housekeeping activities and hygiene.

31.   Nick Champagne, W&T's production supervisor on the platform, had the authority to terminate plaintiff's employment with W&T and to have plaintiff removed from the platform if he felt plaintiff's work performance was inadequate. If Mr. Chatelain or Mr. Vines believed plaintiff's work was inadequate, they would have reported

---

[9] Although this fact is not specifically disputed by plaintiff and no evidence was supplied, again, plaintiff argues in his opposition brief that he followed OSA's work orders.

plaintiff's work performance to Mr. Champagne, who would have terminated plaintiff's employment with W&T.

32.   After plaintiff went to work as W&T's cook/steward on the platform, he went to the OSA office only one time for the sole purpose of picking up his checks.  Plaintiff did not go to the OSA office for any other reason.

33.   Plaintiff worked and remained on Ship Shoal 214-E from June 20, 2008, through July 12, 2008 without a break.  During this time, he worked 15-18 hours per day.

34.   Mr. Chatelain worked alternating hitches as an Operator-A exclusively for W&T for the time period between April 1, 2008 - March 19, 2009.  Mr. Chatelain received all instructions and work directions from W&T; the foregoing work arrangement was in effect for nearly one full year during his alternating 14-day-on /14-day-off hitches.

35.   Mr. Chatelain was performing W&T's work as an Operator-A on its platforms.

36.   Baker, Mr. Chatelain's nominal employer, did not direct or control Mr. Chatelain's day-to-day activities aboard W&T's platform.  These day-to-day activities were directed by his W&T supervisors, including Nick Champagne.  Baker did not instruct Mr. Chatelain how to perform his job duties or control his job duties as an Operator-A, but Baker merely directed Mr. Chatelain to go to W&T's platform and perform activities pursuant to instructions received from his W&T supervisor.

37.   Mr. Chatelain was the only Baker employee on the platform, and he had no Baker supervision offshore pertaining to his work for W&T.

38.   Mr. Chatelain understood his work arrangement with W&T, and he accepted that arrangement without objection during the time he was exclusively assigned to work for W&T.

39.   W&T provided the location, transportation, board, tools, and all equipment for the performance of Mr. Chatelain's work over the extended time period of exclusive service to W&T.

40.   W&T had the right to discharge Mr. Chatelain from employment with W&T, and likewise could have him removed from its offshore facility and any W&T property.

41.   Mr. Chatelain prepared Baker time tickets of his hours and overtime hours; W&T was required to verify and approve the time tickets; these were turned in to Baker for processing and billing to W&T; and W&T was billed in a corresponding fashion for the hours set forth on the approved time tickets.

In the motions before the Court, W&T and Baker contend there are no genuine issues of material fact that both plaintiff and Mr. Chatelain were the borrowed employees of W&T and, therefore, were co-employees vis-a-vis each other and W&T. Therefore, defendants contend the exclusive remedy provisions of the LHWCA (applicable by virtue of OCSLA) bar any potential tort-based recovery on the part of plaintiff against either W&T or Baker.

## II.   Law and Analysis

Federal jurisdiction in this matter is based on OCSLA, 43 U.S.C. § 1331 *et seq.* "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations. "Thus the law applicable is 'federal law, supplemented by state law of the adjacent state.'" *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003)(citations omitted); *see also* 43 U.S.C. § 1333(a)(2)(A).

Pursuant to OCSLA, the LHWCA, 33 U.S.C. § 901, *et seq.*, is the law applicable to provide an injured offshore worker compensation benefits. If plaintiff is found to be the borrowed employee of W&T, then he is covered by the LHWCA, entitling him to worker's compensation under this Act. Worker's compensation under the LHWCA is the exclusive remedy for an employee against his employer because the LHWCA bars all common law tort actions against the employer, and W&T was plaintiff's employer if plaintiff was W&T's borrowed employee. *See* 33 U.S.C. §905(a);[10]

---

[10] 33 U.S.C. §905(a) states:

a) Employer liability; failure of employer to secure payment of compensation

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may

*Melancon v. Amoco Production Co.*, 834 F.2d 1238, 1243-44 (5th Cir. 1988), *citing Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375 (5th Cir.1985); *Hebron v. Union Oil Co. of California*, 634 F.2d 245, 248 (5th Cir.1981); *Gaudet v. Exxon Corp.*, 562 F.2d 351, 356 (5th Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).

If the LHWCA applies, it preempts "the application of the idiosyncrasies of the Louisiana Workers' Compensation scheme." *Perron v. Bell Maintenance and Fabricators, Inc.*, 970 F.2d 1409, 1411 (5th Cir. 1992). However, as this Court explained in *Lemaire v. Danos & Curole Marine Contractors Inc.*, 265 F.3d 1059, 2001 WL 872840 (5th Cir. 2001) (as affirmed by the Fifth Circuit), outside of the Workers' Compensation arena, OCSLA makes the tort law of the adjacent state surrogate federal law and thus applicable to any tort-based cause of action for those offshore injuries. *See* 43 U.S.C. § 1381, *et seq.* As this Court stated in *Lemaire*:

> In other words, were the plaintiff to have a remedy in tort against a non-employer and thus, outside the LHWCA, this Court would apply the substantive tort law of Louisiana. However, should this plaintiff not have a tort remedy available against defendants D & C and Phillips for the reasons urged by D & C and Phillips, LeMaire would be limited to LHWCA benefits as the LHWCA is the workers' compensation scheme applicable to an offshore worker, such as the plaintiff, who sustains a work related injury on the Outer Continental Shelf.

---

elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.

33 U.S.C. §905(a).

2001 WL 872840, *3.[11]

W&T and Baker argue plaintiff and his supervisor, Mr. Chatelain, are both borrowed employees of W&T, and thus, plaintiff cannot sue either W&T or Baker in tort. Rather, defendants contend, in their separate motions, plaintiff's exclusive remedy is compensation benefits under the LHWCA. If both plaintiff and Mr. Chatelain are the borrowed employees of W&T and, are therefore, co-employees, plaintiff cannot sue his co-employee or his co-employee's nominal employer, Baker, for the reasons set forth in more detail hereinbelow. *See Perron*, 970 F.2d at 1411.

A borrowed servant becomes the employee of the borrowing employer, *Standard Oil v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909), and "is to be dealt with as the servant of the [borrowing employer] and not of the [nominal employer]." *Denton v. Yazoo & M.V. Railway Co.,* 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed. 310 (1932), cited in *Perron v. Bell Maintenance and Fabricators, inc.*, 970 F.2d 1409, 1412 (5th Cir. 1992). The parties agree on the law to be applied to decide the borrowed employee issues in this matter. "The question of borrowed employee status is a question of law for the district court to determine." *Billizon v. Conoco, Inc.,* 993 F.2d 104, 105 (5th Cir.), *reh'g denied,* 3 F.3d 441 (1993), *cited in Lemaire,* 2001 WL 872840, at *3-4; *Hotard v. Devon Energy Corp, L.P.*, 2008 WL 2228922 (W.D La. 2008) (J. Melançon) and *Magnon v. Forest Oil Co.*, 2007 WL 2736612 (W.D. La. 2007) (J. Melançon). However, "in some cases, factual disputes must be resolved before the district court can make its legal determination." *Billizon*, 993 F.2d at 105. The Fifth Circuit has set out the following nine factors which must be considered in

---

[11] This Court notes the Fifth Circuit affirmed the ruling of this Court on appeal and essentially adopted this Court's Memorandum Ruling as the ruling on appeal. The Fifth Circuit's decision affirming this Court's ruling is unpublished and, therefore, has no precedential value within the circuit; however, this Court cites to the Memorandum Ruling it issued in *Lemaire* in support of the ruling issued this date.

determining borrowed employee status:

1.  Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?

2.  Whose work was being performed?

3.  Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4.  Did the employee acquiesce in the new work situation?

5.  Did the original employer terminate his relationship with the employee?

6.  Who furnished tools and place for performance?

7.  Was the new employment over a considerable length of time?

8.  Who had the right to discharge the employee?

9.  Who had the obligation to pay the employee?

*Id., citing Brown v. Union Oil Co. of California,* 984 F.2d 674, 676 (5th Cir.1993).  The Fifth Circuit "has held many times that no single factor is determinative." *Id.* at 106.  However, the court has also stated the first factor is the "central issue" of borrowed employee status, *Melancon v. Amoco Production Co.,* 834 F.2d 1238, 1245 (5th Cir.) *amended,* 841 F.2d 572 (1988).  In other cases, the Fifth Circuit has stressed the importance of the fourth, fifth, sixth, and seventh factors of borrowed employee status. *See Id.,* n.12.

This Court will now apply the facts of the instant case to each of the nine factors that must be considered in order to decide whether plaintiff and Mr. Chatelain are the borrowed employees of W&T.  Although W&T and Baker advance similar arguments and have essentially joined in each other's motions, the defendants seek very different relief.  Therefore, in order to analyze the relief requested by each defendant, the Court will address the motions separately.

A. **W&T's Motion for Summary Judgment [Doc. 16] – Was the plaintiff the borrowed employee of W&T?**

W&T argues plaintiff is its borrowed employee, and therefore, plaintiff's exclusive remedy vis-a-vis W&T is under the LHWCA for compensation benefits. The Court will analyze each *Ruiz* factor to determine whether plaintiff is the borrowed employee of W&T.

1. **Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?**

To determine who has control over the employee, the Court is required to distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking." *Ruiz*, 413 F.2d at 313, *quoting Standard Oil Co. v. Anderson*, 212 U.S. 215, 222, 29 S.Ct. 252, 254 (1909).

The evidence presented by W&T in the form of the sworn declaration of Nick Champagne and the deposition testimony of the plaintiff establishes that other than instructing the plaintiff to report to the W&T platform for work, OSA did not control the plaintiff's day-to-day work activities aboard W&T's platform. Rather, plaintiff's work schedule on the platform was set and exclusively supervised by W&T personnel. Plaintiff referred to his W&T supervisors as his "bosses" and admitted he did not have any OSA supervisory personnel working with him offshore. Plaintiff's duties included preparing W&T's meals, ordering W&T's food, cleaning W&T's galley, and cleaning W&T's bunkhouse. W&T contends W&T gave plaintiff all of his work instructions concerning the performance of these job duties, and plaintiff was required to, and did, follow the instructions W&T personnel gave him.

Plaintiff argues as a skilled cook who knew the tasks he would be required to perform on the platform, only *he* controlled what he cooked and how he cooked it. Thus, plaintiff contends he

controlled his own work according to the instructions he received from is OSA employer, arguing "[t]he instructions he received from OSA presumably comported with what OSA agreed to do in a contract for services with W&T."[12] Plaintiff further argues "OSA instructed plaintiff as to what and how he was to do on the W&T platform" and "W&T did not exercise control over what plaintiff did on a daily basis, even though plaintiff tried to be as agreeable as possible." In essence, therefore, plaintiff argues because he was a knowledgeable cook and was not told on a step-by-step basis how to perform his job, W&T did not exercise control over him.

District courts interpreting the control factor as set forth by the Fifth Circuit have rejected the argument advanced by plaintiff. For example, in *Magnon*, the district court stated:

> Plaintiff also argues that, because he allegedly received all of his training as a "production operator" prior to or during his training with Prosper, Forest Oil cannot fulfill the control element of the *Ruiz* test. Assuming, *arguendo,* that this allegation is true, it would not prohibit a finding of control in this case. *It is often the case that an employee comes into a job already trained. Following plaintiff's logic, however, any employer who hires a skilled or trained employee would be incapable of fulfilling the control factor. This result is simply untenable, and the Court rejects plaintiff's argument.... "[t]his Court does not interpret the control factor to require that the borrowing employer direct each and every action taken by the borrowed employee." A borrowing employer is not required to micro-manage a borrowed employee in every assigned task. It is enough in this case that Magnon took his orders from Forest Oil and was acting pursuant to those orders when he was injured.*

*Magnon*, 2007 WL 2736612, *3-4 (internal citations omitted) (emphasis added). *See also Baker v. Chevron USA, Inc.*, 1993 WL 8300 (E.D. La. 1993) (J. Arceneaux) ("close supervision of skilled employees is not needed to establish control.").

In the instant case, once he was on W&T's platform, plaintiff performed W&T's work and

---

[12] Plaintiff argues the Master Service Agreement between OSA and W&T has not been located; however, W&T attaches it to its reply memorandum and states the MSA was identified in W&T's initial disclosures and transmitted to plaintiff's counsel on June 17, 2009. W&T indicates at that time, plaintiff's counsel was asked to identify any documents identified in the initial disclosures of which he wanted copies. W&T states plaintiff's counsel never asked for a copy of the OSA/W&T MSA.

was under the direct control and supervision of W&T's employees. No OSA employees were aboard the platform during any of plaintiff's hitches, and there is no competent evidence to suggest OSA, in any way, actually maintained control of the plaintiff. Although plaintiff chose what meals to cook and ordered his food and ingredients accordingly, plaintiff admitted he tried to accommodate the W&T personnel whenever possible in that regard. Additionally, W&T directed when meals were to be served. In fact, plaintiff alleges he was injured while asking the W&T personnel what time they wanted a meal served. The record shows plaintiff had very little contact with OCS while aboard the platform (by plaintiff's own estimation, he contacted OCS approximately 4 times in 22 days).

Plaintiff's argument that he was not required to attend W&T safety meetings – which he argues might have established a degree of control over the plaintiff – is similarly unavailing. Safety meetings are typically required for individuals performing the work of the platform; plaintiff was preparing meals in the galley and cleaning the bunkhouse. Moreover, plaintiff admits he frequently attended these meetings voluntarily. Nevertheless, even if plaintiff had not attended safety meetings, considering the other evidence concerning the control issue, the lack of requirement to attend W&T safety meetings would not negate W&T's control over the plaintiff in this case.

Considering the foregoing, this Court concludes the control factor weighs in favor of borrowed employee status in this case.

### 2.    Whose work was being performed?

Although plaintiff argues there are genuine issues of material fact regarding whose work he was performing aboard the platform, plaintiff presents no evidence to support this assertion, other than the affidavit of Nick Champagne, W&T's production supervisor, who attested his job responsibilities included "production supervisor and monitoring of oil, natural gas, mineral

-17-

operations in the subject field, the coordination and orchestration of maintenance activities on the platforms and wells in the subject filed." Plaintiff's argument appears to be that because Mr. Champagne did not list "cooking" or "cleaning" as one of his job responsibilities, then "cooking" and/or "cleaning" could not have been part of W&T's work. Plaintiff also argues he was primarily serving OSA's purposes by doing the work OSA had obligated itself to do under its contract with W&T.

Plaintiff's argument is strained. While it certainly was in OSA's interests that the plaintiff perform the work W&T assigned him to do, inasmuch as W&T would continue to utilize OSA's services if satisfactory work was provided, this Court finds plaintiff was hired to prepare meals and clean the platform for the support staff working aboard the platform while it was being sandblasted and painted. This is indisputably the "work" of W&T. Notably, as pointed out by W&T, plaintiff does not argue he was doing the work of OSA.

Considering the foregoing, the Court concludes this factor weighs heavily in favor or borrowed employee status.

### 3.    Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

In its motion, W&T argues there was an understanding between W&T and OSA that plaintiff would be performing the work of W&T while plaintiff was aboard the platform. Indeed, plaintiff testified he worked a total of 22 days on the platform before his injury and intended to work a 21-days-on, 7-days-off hitch for the unforeseen future. In response, plaintiff does not specifically address the understanding between OSA and W&T, alluding to the allegedly missing Master Service Agreement between OSA and W&T – which W&T attaches to its reply brief – and further arguing points better addressed with respect to the control and work factors.

-18-

In its reply brief, W&T addresses and attaches the Master Service Agreement ("MSA") between OSA and W&T. Section 3 of the MSA states OSA is an independent contractor and that neither OSA nor its employees are "servants, agents, or employees of W&T." However, notwithstanding the express language of the MSA, courts have found contract provisions similar to the one at issue here do not prohibit a finding of borrowed servant status where the workplace realities are otherwise. Indeed, the Fifth Circuit has held the terms of the contract between the borrowing employer and payroll employer do not ordinarily provide a sufficient basis to deny summary judgment when the remaining *Ruiz* factors point toward borrowed servant status. *Alexander v. Chevron, U.S.A.*, 806 F.2d 526, 529 (5th Cir. 1986), *citing Gaudet v. Exxon Corp.*, 562 F.2d 351, 358 (5th Cir. 1979). Thus, the parties' actions in carrying out the contract can impliedly modify or waive the express provision. *Brown v. Union Oil Co. of California*, 984 F.2d 674, 678 (5th Cir. 1993), *citing Melancon*, 834 F.2d at 1245.

The Fifth Circuit has addressed contractual provisions similar to the one at issue here in other cases. *See, e.g., Melancon*, 834 F.2d at 1245 & n. 13; *West v. Kerr-McGee Corp.*, 765 F.2d 526, 528, 531 (5th Cir. 1985); *Alday v. patterson Truck Line, Inc.*, 750 F.2d 375, 377-78 (5th Cir. 1985); *Dugas v. Pelican Construction Co.*, 481 F.2d 773 (5th Cir.1973). *But cf. Alexander v. Chevron, U.S.A.*, 806 F.2d 526, 528 (5th Cir.1986) (distinguishing *Alday* and *West* by noting that the contract provision did not *explicitly* prohibit plaintiff from becoming a borrowed employee). In *Alday*, the Court addressed the issue as follows:

> In *Gaudet, supra,* 562 F.2d at 359, it is true, summary judgment was upheld against the employee-plaintiff as "borrowed," despite a somewhat similar provision in the contract between the payroll and borrowing employers. However, unlike the facts so far shown by the present record, in *Gaudet* all factors other than the contract pointed to the acquiescence of both payroll employer and the plaintiff employees to the latters' undisputed transfer to exclusive supervision and control by the borrowing

employer over an extended period of time (12 years for one plaintiff, 17 for another), under conditions where the employees fully appreciated and accepted the risks of their borrowed employment. *Id.,* 562 F.2d at 358-59. The issue was therefore resolved on the basis of the factual matters not in dispute, which negated the significance of the contract. *Id.*

*Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375, 379 (5th Cir. 1985).

In the instant case, all of the factors other than the contract factor favor borrowed employee status, except for the length of employment factor, which this Court considers to be a neutral factor. The evidence presented to the Court shows plaintiff was performing the work of W&T while on the platform and was supervised by W&T and/or Baker personnel. Thus, this Court concludes the parties' actions in carrying out the OSA/W&T contract impliedly modified the express provisions of the contract. Ergo, this factor weighs in favor of borrowed employee status.

### 4.    Did the employee acquiesce in the new work situation?

The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them. *See Brown v. Union Oil Co. of California*, 984 F.2d 674, 678 (5th Cir. 1993), *citing Melancon,* 834 F.2d at 1246. In *Brown*, the court noted the plaintiff worked, slept, and ate in the purported borrowing employer's field for one month prior to his accident. Noting many cases affirming borrowed servant status have involved longer periods of work, the court concluded one month was a sufficient amount of time for the plaintiff to appreciate the new work conditions.

Similarly, in the instant case, the plaintiff worked, slept, and ate on W&T's platform for a period of approximately 22 days prior to his accident. This Court concludes this 22-day period is a sufficient amount of time for the plaintiff to appreciate, and acquiesce in, his new work conditions. Therefore, the Court concludes this factor favors borrowed employee status.

**5.      Did the original employer terminate his relationship with the employee?**

It is well-settled a finding of borrowed employee status does not require that the lending employer completely sever its relation with the employee. *Magnon*, 2007 WL 2736612 at *5, *citing Melancon,* 834 F.2d at 1238; *Capps,* 784 F.2d at 617-8.  The focus, instead, is on the lending employer's relationship with the employee while the borrowing occurs.  *Capps,* 784 F.2d at 617-8. *Brown*, 984 F.2d at 678-79, *citing Melancon,* 834 F.2d at 1246.  In *Brown*, the plaintiff worked two hitches for the purported borrowing employer.  On the second hitch, the evidence showed plaintiff's work was unsupervised.  However, on his first hitch, the evidence showed plaintiff's nominal employer supervised his work.  The court held this factor did not overwhelmingly favor borrowed employee status. *Brown*, 984 F.2d at 679.

In the instant case, plaintiff argues he called OSA "just about every week" while he worked on W&T's platform, and OSA "maintained a degree of authority over plaintiff" while he was aboard the platform.  However, despite plaintiff's argument, plaintiff has presented no evidence showing OSA actually supervised plaintiff's work on the platform.  It is undisputed plaintiff was the only individual on the platform affiliated with OSA.  Additionally, although plaintiff argues OSA "retained authority 'to check on him' and instruct him in the performance of his work," plaintiff's only evidence supporting this argument is his self-serving deposition testimony.  Yet even plaintiff's testimony does not support a supervisory relationship while the borrowing was occurring, to wit:

> Q:      Nobody at OSA's office said, man, his cooking's warm, it's – they wouldn't have a clue because they weren't – they had no other OSA personnel aboard the platform; correct?
>
> A.      I spoke to [OSA] while I was out there, too.  I called them a few times also because I had to report in, you know, just about every week to them.
>
> Q:      Of course, you had to report your time tickets; correct?

A:    Well, my time tickets, I had to let them know how everything going and this
      and that.  They would call sometimes and check on me, too.

Q:    They wanted to make sure they were pleasing their customer?

A:    That's right.

[Robertson Deposition, p. 233].

Thus, it appears plaintiff contacted OSA to report his time sheets.  Additionally, according
to plaintiff, OSA called to check on him to make sure everything was going well on the job and that
W&T's needs were being met.  The foregoing does not evidence a supervisory relationship between
OSA and the plaintiff while the plaintiff was aboard W&T's platform.  Considering the foregoing,
the Court concludes this factor favors borrowed employee status.

### 6.    Who furnished tools and place for performance?

Other than the plaintiff's argument that the main tools of his trade are his hands, it is
undisputed the tools and place for performance for plaintiff's work were furnished by W&T.  W&T
provided the transportation for plaintiff to get from shore to the platform and back again; W&T
provided all the food the plaintiff ate and the accommodations in which he slept while working on
the platform; W&T provided all of the equipment, appliances, and tools used by the plaintiff in
performing his work, and W&T provided all the raw food the plaintiff prepared as steward/cook, as
well as all condiments, coking oil, and other ingredients used in preparing the meals.

Plaintiff's argument that his hands – and his knowledge – are his most important tools and
were provided by plaintiff himself is unpersuasive.  Considering the foregoing, this Court concludes
this factor weighs heavily in favor of borrowed employee status.

### 7.    Was the new employment over a considerable length of time?

"Where the length of employment is considerable, this factor supports a finding that the

-22-

employee is a borrowed employee." *Capps v. N.L. Baroid-NL Indus., Inc.,* 784 F.2d 615, 618 (5th Cir.1986) (but specifically finding this factor was neutral where injury occurred on plaintiff's first day of work), *cited in Hotard v. Devon Energy Corp.,* L.P. 2008 WL 2228922, 5 (W.D. La. 2008) (J. Melançon) (finding eleven months weighed "in favor of finding for borrowed employee status."). *See also Williams v. Arco Oil & Gas, Inc.,* 1990 WL 178722 (E.D. La. 1990) (J. Feldman) (finding six months a "significant length of time"). *But see U.S. Fire Ins. Co. v. Miller,* 381 F.3d 385, 390 (5th Cir.2004) (stating it is "debatable whether approximately a year and a half is a "considerable" length of time," but nevertheless finding district court was correct in determining a year and a half weighs in favor of finding for borrowed employee status). Notwithstanding the foregoing, the Fifth Circuit has previously found borrowed servant status when the employee's injury occurred on the first day of the job. *See Champagne v. Penrod Drilling Co.,* 341 F.Supp. 1282 (W.D.La.1971) (J. Hunter), *aff'd. per curiam,* 459 F.2d 1042 (5th Cir.1972). Additionally, the Fifth Circuit has specifically held one-month period is neutral. *See, e.g., Brown,* 984 F.2d at 679.

In the instant case, plaintiff worked on W&T's platform from June 20, 2008 through July 12, 2008, a period of 22 days, under the arrangement and the capacity previously discussed. W&T contends that, but for his injury, plaintiff intended to work a period of 30 days before taking a break. Additionally, WA&T contends the plaintiff intended to return to the platform to work on a 21-day-on, 7-day-off scheduled after the completion of his 30-day hitch. W&T contends the plaintiff understood the job with W&T would last a long time. Plaintiff argues 22 days makes this factor "at best neutral."

After consideration of the evidence presented, the Court concludes this factor favors neither party and is, therefore, neutral.

-23-

### 8.    Who had the right to discharge the employee?

The plaintiff testified at his deposition W&T had the right to discharge him from its

operations on the platform if he violated platform rules or policies, to wit:

> Q.            If you would violate their policies and if they said,
> hey, you can't do that and you said well, tough, I'm
> going to keep doing it in violation of your policies, do
> you believe that they'd have the authority to remove
> you from their own platform?
>
> A [Plaintiff].      Yeah.
>
> ...
>
> Q.    What about Mr. Chatelain? If you were in violation of platform rules
> and you said, well, I'm going to keep violating them, do you believe
> that you could have been sent in by him?
>
> A.    Yeah.
>
> Q.    Same with Mr. Vines?
>
> A.    Yes.
>
> Q.    So any of the supervisory personnel offshore, even though they
> weren't employees of OSA, could have had you run off if they wanted
> to get you removed from that platform; correct?
>
> A.    Yes.

[Robertson Deposition, pp. 246-47].

Plaintiff admits as much in his opposition brief, stating "if [W&T] had been unhappy with

his work performance, they could have discharged him." Plaintiff argues, however, that W&T could

not have terminated his employment with *OSA*. However, termination of plaintiff's employment

with his nominal employer is not the focus of this factor. Rather, where the borrowing employer

(here, W&T) has the right to terminate the borrowed employee's services with the borrowing

employer, even though the borrowing employer does not have the right to terminated the borrowed employee's position with the nominal employer (here, OSA), the right to discharge factor is satisfied. *See, e g., Hotard v. Devon Energy Corp., L.P.*, 2008 WLL 2228922 at *5, *citing Melancon*, 834 F.2d at 1246 ("[the purported borrowing employer's] right to terminate [plaintiff's] services in [the borrowing employer's field] satisfied this requirement."). *See also Magnon*, 2007 WL 2736612 at *7 ("This arrangement is sufficient to support a finding of borrowed employee status."), *citing Brown* 984 F.2d at 679. Considering the foregoing, the Court concludes this factor favors borrowed employee status.

### 9.  Who had the obligation to pay the employee?

Plaintiff admitted at his deposition he completed time tickets for the work he performed, which were then submitted to his W&T supervisor for review, approval, and verification. After the W&T supervisor approved the time tickets, the tickets were forwarded to OSA for further processing, including billing to W&T. While OSA ultimately issued plaintiff's paycheck, OSA would bill W&T for plaintiff's time. This arrangement has been held to support a finding of borrowed employee status in other cases. *See Magnon*, 2007 WL 2736612, *citing Melancon*, 834 F.2d at 1246; *Billizon*, 993 F.2d at 105-06; *Capps*, 784 F.2d at 618. Therefore, this Court concludes this factor weighs heavily in favor of borrowed employee status.

Considering the foregoing, after review of the *Ruiz* factors, this Court concludes all factors weigh in favor of borrowed employee status except one – length of employment. Therefore, considering the evidence presented to this Court, the Court concludes the plaintiff is the borrowed employee of W&T. As such, workers compensation benefits under the LHWCA is the exclusive remedy for plaintiff vis-a-vis W&T. Consequently, W&T's motion for summary judgment [Doc.

16] is GRANTED, and plaintiff's tort-based claims asserted against W&T in this lawsuit are DENIED AND DISMISSED WITH PREJUDICE.

### B.    Baker's Motion for Summary Judgment [Doc. 15] – Was Mr. Chatelain the borrowed employee of W&T?

Baker argues Raymond Chatelain, Jr., the Baker employee who supervised plaintiff onboard the W&T platform, was also a borrowed employee of W&T. As such, Baker contends plaintiff and Mr. Chatelain were "co-employees" vis-a-vis each other and W&T, and therefore, pursuant to the LHWCA, Mr. Chatelain and Mr. Chatelain's nominal employer, Baker, is immune from tort liability as to any negligence on Mr. Chatelain's part. Therefore, Baker seeks dismissal of plaintiff's claims against it on grounds both plaintiff and Mr. Chatelain were the borrowed employees of their common borrowing employer, W&T, and therefore Baker is immune from tort liability and any alleged negligence on the part of Mr. Chatelain allegedly causing the injury of the plaintiff.

In his opposition brief, plaintiff does not address the separate grounds for relief urged by Baker. That is, plaintiff makes no attempt to contest the status of Mr. Chatelain as a borrowed employee of W&T. Plaintiff has provided no evidentiary assertions contesting the arguments of Baker, nor does plaintiff even argue that Mr. Chatelain is not a borrowed employee of W&T.

The Supreme Court has instructed "[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990), *quoting*

-26-

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In the instant case, plaintiff has failed to make a showing sufficient to establish the existence of an element essential to plaintiff's case against Baker, and on which plaintiff will bear the burden of proof at trial. Specifically, plaintiff fails to put forth any evidence contradicting the declarations of Mr. Chatelain and Mr. Champagne, in which both men assert Mr. Chatelain was a borrowed employee of W&T, along with the plaintiff. Furthermore, the *Ruiz* factors appear to favor borrowed employee status on the part of Mr. Chatelain. Considering the foregoing, this Court concludes Mr. Chatelain was the borrowed employee of W&T.

**C.**     ***Perron v. Bell Maintenance and Fabricators, Inc.*, 970 F.2d 1409 (5th Cir. 1992)**

This Court now has two issues remaining to determine: 1) whether plaintiff and Mr. Chatelain, each found by this Court, individually, to be borrowed employees of W&T, were persons "in the same employ" as defined by the LHWCA at the time of plaintiff's alleged accident, and therefore, immune from tort suit against one another; and 2) if plaintiff and Mr. Chatelain were co-employees of W&T, then whether plaintiff's claims against Mr. Chatelain's nominal employer, Baker, are also barred under the LHWCA, § 933(i).[13]  The Fifth Circuit addressed both of these issues in *Perron v. Bell Maintenance and Fabricators, Inc.*, 970 F.2d 1409 (5th Cir.1992). Therefore, this Court will examine plaintiff's claims against W&T and Baker in light of the Fifth Circuit's

---

[13] 33 U.S.C. §933(i) sates:

> i) Right to compensation as exclusive remedy
>
> The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: *Provided,* That this provision shall not affect the liability of a person other than an officer or employee of the employer.

33 U.S.C. §933(i).

findings in *Perron.*

This Court exhaustively discussed the *Perron* decision in *Lemaire*, as follows:

The primary issue before the Fifth Circuit in *Perron* was whether the bar under the LHWCA, § 933(i), for suits against a co-employee likewise applied to the respondeat superior action before that court filed by the plaintiff against his co-employee's employer. 970 F.2d at 1410. The Fifth Circuit affirmed the district court's granting of summary judgment in favor of the employer. *Id.*

In *Perron,* the Court examined a fact scenario similar to that before this Court. In that case, the plaintiff worked for D & C nominally and was injured while working on a Gulf Oil production platform when he slipped and fell because of oil left on the platform by Michael Lee, a direct employee of Bell Maintenance. The plaintiff filed suit against Gulf Oil ("Gulf") and Bell Maintenance ("Bell"). Gulf was dismissed on summary judgment based on the district court's determination and the Fifth Circuit's affirmation of the plaintiff's status as Gulf's borrowed employee.

Bell Maintenance subsequently filed a motion for summary judgment. The Fifth Circuit affirmed the district court's dismissal of Bell and stated that "[i]n sum, Perron and Lee were co-workers in every meaningful sense of the term. And because they were borrowed servants/co-employees of the same employer (Gulf), *a fortiori,* they were 'persons in the same employ' under § 933(i)." *Id.* at 1412.

In *Perron,* the plaintiff contended that § 933(i) immunized only the employer of the injured employee. *Id.* at 1411. The Fifth Circuit corrected this assumption and stated that, "Section 933(i) does not protect employers; it protects negligent co-employees." *Id.* at 1412. The Court then clarified the borrowed employment issue now before this Court. The Court stated:

A borrowed servant becomes the employee of the borrowing employer, and "is to be dealt with as the servant of the [borrowing employer] and not of the [nominal employer]." In *Ruiz v. Shell Oil Co.,* our court adopted the borrowed servant rule for the LHWCA. And borrowed servant status is a question of law.

*Lemaire*, 265 F.3d 1059, *citing Perron*, 970 F.23d at 1412 (citations omitted).

This Court has already concluded both plaintiff and Mr. Chatelain were the borrowed employees of W&T. Pursuant to *Perron* and the findings of this Court, the Court concludes plaintiff and Mr. Chatelain were "persons in the same employ" under § 933(i), and, therefore, co-employees

-28-

of W&T at the time of plaintiff's alleged accident.

The next part of the analysis was explained by the Fifth Circuit in *Perron*:

> Given that [the plaintiff] is barred by § 933(i) from bringing an action against Lee, at issue is whether [the plaintiff] can bring this respondeat superior action against Bell, Lee's nominal employer. Consistent with the LHWCA's comprehensive scheme, [the plaintiff] is barred from doing so.

970 F.2d at 1412.

Pursuant to the Court's reasoning in *Perron,* this Court must next address the issue of whether plaintiff can bring a *respondeat superior* action against Baker, Mr. Chatelain's nominal employer.  In *Perron*, the Fifth Circuit stated bringing such an action against a co-employee's nominal employer would not be consistent with the LHWCA's comprehensive scheme.  *Id.*  Thus, the Fifth Circuit states, the plaintiff is barred from bringing this *respondeat superior* action.  *Id.* Accordingly, this Court concludes to allow plaintiff to bring a *respondeat superior* action against Baker, Mr. Chatelain's nominal employer, would not be consistent with the LHWCA's comprehensive scheme.  Therefore, plaintiff is barred from bringing his claims against Baker.

### D.    Plaintiff's Claims Under Louisiana Law

Although no party addresses the following issue specifically, this Court notes plaintiff's claims against both W&T and Baker are brought pursuant to OCSLA and "under the law and statutes of the State of Louisiana, including but not limited to C.C. Arts. 2315, et seq. . . " In *Perron*, the plaintiff contended Louisiana tort law governed his suit against his co-employee's nominal employer, defendant Bell, under the OCSLA. The Fifth Circuit addressed the plaintiff's OCSLA argument and held "[s]ection 933(i) provides that LHWCA payments 'shall be the exclusive remedy to an employee when he is injured ... by the negligence or wrong of any other person or person in the same

employ.'  State law is therefore, preempted by § 933(i) in this instance." *Perron*, 970 F.2d at 1413-14.

In the case *sub judice,* plaintiff sets forth Louisiana state law as the governing law regarding third party negligence and damages, pursuant to OCSLA.  However, in *Perron*, the Fifth Circuit found Louisiana law regarding third party negligence and immunity to be inconsistent with §933(i) as it applied to the plaintiff's action against his co-employee's nominal employer.  *Id.*  Therefore, this Court finds Louisiana law regarding third party negligence and immunity to be preempted here as well.  Therefore, §933(i) applies and precludes the application of any Louisiana tort law principles to plaintiff's action against Baker.

Considering the foregoing, and it appearing that Baker's motion for summary judgment is well-grounded in law and fact, IT IS ORDERED that Baker's motion for summary judgment [Doc. 15] is GRANTED, and all claims asserted by plaintiff against Baker are DENIED AND DISMISSED WITH PREJUDICE.

### III.   Conclusion

For the reasons stated herein,

IT IS ORDERED that W&T's motion for summary judgment [Doc. 16] is GRANTED, and plaintiff's tort-based claims asserted against W&T in this lawsuit are DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Baker's motion for summary judgment [Doc. 15] is

-30-

GRANTED, and all claims asserted by plaintiff against Baker are DENIED AND DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 12 day of May, 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE